On Rehearing
HOBSON, Justice.
Upon a careful consideration of this case we have reached the conclusion that we should recede in part from our original judgment of affirmance. We have decided that the chancellor was not justified in rejecting certain findings of fact made by the special master, nor was he warranted in failing to follow the recommendations which logically flowed therefrom. We have also found and determined that the chancellor in some instances misconceived the legal effect of the evidence and in others he neglected to apply the principles applicable to this suit in equity.
At the threshold we deem it appropriate to observe that the special master *920 found, and the chancellor confirmed such finding, that:
“The question as to whether T. J. [Galatis] and Julia Galatis had the right to enter into the partnership and stock option agreements [the former dated December 24, 1943, and the latter bearing date December '6, 1943] dependent upon the agreement of October 10, 1941, by which the three children conveyed to Julia all of their interest in the estate of Jerry Galatis. In view of the conclusion that the plaintiff [Marguerite G. Plasman] has not sustained her position that the transfer of her interest in Jerry’s estate to Julia was conditional then logically it must be concluded that Julia was free to contract with her property in any manner that she saw fit.”
We find.in the record competent substantial evidence which sustains this finding.
From this finding which we approve it must be concluded that the stock option agreement and the partnership agreement which provided that the survivor would be obligated to purchase the interest of the deceased partner were valid, and the only question in this regard for our determination is whether T. J. Galatis failed to “properly or timely” exercise the stock option dated December 6, 1943, and assume his obligation under the partnership agreement, .dated December 24, 1943, to purchase the interest of the deceased partner. Apparently the basis of the chancellor’s determination that T. J. Galatis failed to properly or timely exercise his option or perform his obligation was predicated upon the contention that after T. J. Galatis became administrator of Julia’s estate he individually notified himself as administrator that he was exercising the option to acquire Julia’s stock in Seven Seas, Inc., and that he was carrying out his obligation to acquire Julia’s interest in the partnership. It is not difficult to agree with the special master that the situation which confronted T. J. Galatis was “unusual”. He had to notify someone who was in charge of liis mother’s estate. Since he was administrator of said estate, he was the only one to whom he could give formal notice of his intention to exercise his option and to carry out his duty under the partnership agreement. We find that he not only notified himself, as administrator, in writing, but that he had previously met in the office of the attorney for the estate, along with the other heirs at law of his deceased! mother, on September 9, 1947, at which conference these matters were discussed, and that it was contemplated that these contractual rights would be exercised.
Apparently T. J. Galatis was three days: late in giving formal notice to himself as administrator of his election to exercise the stock option agreement and to perform his obligation under the partnership agreement to purchase his deceased mother’s interest therein.
We must agree with the master that the record discloses that T. J. Galatis took such steps as he was required to take under the partnership and stock option agreements, particularly in view of the fact that time was not made the essence of either contract, the other heirs had actual notice of his desire and intent and the quandary in which he found himself because of the peculiar circumstance of being optionee and administrator. Indeed, under such circumstances the requirement of formal notice to himself as administrator was vitiated since it would have been nothing more than an empty gesture. However, if it be deemed essential that an administrator in dealing with himself as a party interested adversely to the estate (see Section 732.55, F.S.A.) resort to the probate court for approval of his transaction prior to consummation this was done, but due to the efforts of Marguerite Plasman the apparent attempt to follow the statute was thwarted.
We do not attach great significance to-the fact that the checks tendered by T. J, Galatis for a 10% initial payment under each of the so-called option contracts may not have been computed accurately because his calculation was predicated upon the only information available to him at the *921 time and in accordance with a letter from the offices of Pentland, Purvis, Keller and Company, a well known C.P.A. firm in Miami which had serviced the various Galatis enterprises for a number of years before the death of Jerry Galatis. We are convinced that T. J. Galatis, as was determined by the master, went as far as he could to exercise his rights under these agreements until stopped by this litigation.
It is our conclusion that the chancellor erred in holding that T. J. Galatis did not properly or timely exercise either the stock option or the partnership purchase agreement and that he misconceived the legal effect of the evidence.
With reference to. the indebtedness of Seven Seas, Inc., to Jerry Galatis and subsequently to his estate, in the sum of $28,387, which arose out of the 1941 absorption by Seven Seas, Inc., of International Restaurants, Inc., we have carefully examined the transcript and have concluded that Seven Seas, Inc., accepted the assets charged with this debt and that both the master and the chancellor were correct in reaching this figure as being the correct in reaching this figure as being -the However, we are constrained to the view that the chancellor should have followed the recommendation of the master and have allowed charges on the books of Seven Seas, Inc., against Jerry Galatis in the sum of $6,214.23 as a setoff against the sum of $28,387. We assume that the chancellor, in deciding that the offset was barred by the “lapse of time”, had in mind either that the statute of limitations had run or that the setoff was barred by virtue of the fact that the claim was not filed with the administrator of the estate of Jerry Galatis within the eight months statutory period. It is clear that we are dealing here with mutual accounts and a family corporation. It is our conclusion that if either of these mutual accounts is barred by lapse of time, both are barred, but under the circumstances we feel that neither account in equity and good conscience should be disallowed because of the passage of time.
In connection with the matter of interest on the net credit of $22,172.77 which we approve as a charge against Seven Seas, Inc., we note that the master made no recommendation with reference to interest on this or any other item, and that the chancellor allowed interest upon the sum which he found to be due the estate of Jerry Galatis from Seven Seas, Inc., from April 7, Í941, the date upon which there was a marshalling of assets and a reorganization of Seven Seas, Inc. We are at a loss to understand, since Jerry Galatis died September 9, 1941-, and after his death Julia Galatis, although she supervised the keeping of books for Seven Seas, Inc., never claimed interest on the item of $28,387 due to Jerry Galatis as reflected by the books of said corporation, why the chancellor chose. April 7, 1941 as,the date upon which interest should begin to run. More-' over the record contains no proof of any agreement as to interest. We deem the facts to clearly demonstrate a waiver, of interest on the part of Julia Galatis aqd see no occasion for charging interest on the amount due Jerry Galatis from Seven Seas, Inc., until at least the date upon which T. J. Galatis qualified as administrator of the estate of his mother, Julia Galatis. We reach this conclusion because it was the duty of T. J. Galatis, as administrator of his mother’s estate, promptly to secure possession of the net amount of $22,172.77 by collection of such sum or the reduction of it to a tangible form. Seven Seas, Inc., was not liable for interest under existing circumstances because T. J. Galatis, as administrator of his mother’s estate, failed to perform his duty. We conclude on this item that interest should have been allowed upon the sum of $22,172.77 from September 19, 1947, the date upon which T. J. Galatis, qualified as administrator of his mother’s, estate, and that this item of interest should be surcharged against T. J. Galatis because of his dereliction.
The master found that there had been an accounting error in that the evidence showed that Julia Galatis withdrew from the partnership of Galatis & Galatis *922 $11,510.73 less than the records reflected, when in truth and in fact such amount had been withdrawn by T. J. Galatis. The accountant explained this discrepancy as merely a bookkeeping error in that some of the items withdrawn by T. J. Galatis had been erroneously charged to Julia’s drawing account. We agree with the master and the chancellor that the estate of Julia Galatis is entitled to the sum of $11,-510.73 because of the accounting error. We are of the opinion that no interest should' be allowed on this sum because it would be inequitable to decree interest on monies found to be due the estate of Julia Galatis as the result of an accounting error. In the absence of a clear showing of fraud or dereliction of duty on the part of T. J. Galatis, we find no occasion to surcharge him with interest on this item.
 The master apparently concluded that the question of undrawn salaries by Julia Galatis which had accrued to her at the time of her death in the amount of $13,054.92, payable to her by Seven Seas, Inc., was not an issue raised by the pleadings. The chancellor correctly decided that the estate of Julia Galatis is entitled to receive such undrawn salaries because it was clearly established that she was entitled to such amount as undrawn salaries, and in a case such as this, wherein the businesses were conducted by members of one family, equity should consider all matters of account among the participants and do complete justice. The chancellor decreed interest on this sum of $13,054.92 from August 3, 1947, the date upon which Julia Galatis departed this life. It must have been the chancellor’s view that since Julia Galatis during her lifetime had failed to request or demand the payment of the undrawn salaries, no interest should be charged against Seven Seas, Inc., except from the date of her death. Wé agree that no interest should have been charged prior to her death on this item, but conclude that the interest should be surcharged against T. J. Galatis, rather than be considered an obligation of Seven Seas, Inc., from September 19, 1947, the date upon which he qualified as administrator of his mother’s estate, because as such administrator it was his duty promptly to secure payment to her estate of said undrawn salaries ‘ or reduce the obligation to a tangible form.
We find no occasion to disturb the final decree in connection with the assessment of costs.
It is our conclusion that the final decree entered by the learned chancellor should be affirmed, except insofar as it decreed (1) that T. J. Galatis had not properly or timely exercised the stock option dated December 6, 1943, or performed his obligation contained in the partnership agreement dated December 24, 1943; (2) that the estate of Julia Galatis is the owner of stock certificates numbered 19 and 22 of Seven Seas, Inc., a Florida corporation; (3) that the estate of Julia Galatis is the owner of 50% of the partnership existing between T. J. Galatis and Julia as of August 3, 1947; (4) that T. J. Galatis should forfeit the sum of $5,000 with interest at the rate of 6'% per annum from and after the 1st day of September, 1950 because, as was improperly held, he had not properly or timely exercised his option or performed his obligation under the partnership agreement; (5) that the claimed set off of $6,124.23 should not be credited against the sum of $28,387 found to be due from Seven Seas, Inc. to Jerry Galatis; (6) interest on the various items hereinbefore delineated.
Affirmed in part and reversed in part with directions that a new final decree be entered not inconsistent with this opinion.
TERRELL, ROBERTS and DREW, JJ., concur.
MATHEWS, C. J., and SEBRING and BUFORD, JJ., dissent.